Herbert Capelle, Appellant, v. Chicago and North Western Railway Company, Appellee.

Gen. No. 8,883.

472

Heard in this court at the February term, 1935. Opinion filed May 17, 1935. Rehearing denied June 26, 1935.

BOWE & BOWE, of Chicago, and HALL & HULSE, of Waukegan, for appellant.

NELSON J. WILCOX, of Chicago, for appellee.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This was an action brought by appellant against appellee to recover damages for personal injuries claimed to have been sustained by appellant because of defendant's negligence. Appellant was driver of a milk truck. On the morning of January 23, 1933, at about 6:40 a. m., the truck which he was driving was struck by one of appellee's trains where its tracks intersected a public street in North Chicago, known as Second avenue. Appellee maintained no crossing gates at this crossing, but did have employed a crossing watchman for the purpose of warning traffic of the approach of its trains. In the daytime it was the habit and custom of appellee's crossing watchman to station himself upon the crossing with a large "stop" sign held in his hand with which to warn traffic. At night

the watchman used a lantern with which to warn traffic. Appellee maintained a double track system at this place. Its tracks crossed Second avenue at right angles and ran north and south, while Second avenue ran east and west. On the west side of appellee's tracks the Chicago, North Shore and Milwaukee railroad maintains its electric line which parallels appellee's tracks and which electric line also is a double track system at this place. It was dark at the time the accident happened. The plaintiff sustained severe fractures and injuries on and about his head. The evidence shows that as a result of such injuries, he has been rendered unfit for any employment, suffering from a nervous disorder together with atrophy of muscles, loss of strength, deafness, and an impaired mental condition which is in a progressive state, gradually getting worse. There is no serious dispute regarding the result of the injuries and that the appellant presents a case of total permanent disability.

At the close of the plaintiff's evidence, the defendant filed its motion requesting the court to instruct the jury to find in favor of the defendant. The court announced that he would reserve his ruling thereon until he had heard all of the evidence. The defendant at the close of all the evidence in the case again moved for an instructed verdict. The court again announced that he would reserve his ruling thereon until later. The cause was submitted to the jury and the jury returned a verdict in favor of the plaintiff below and assessed his damages at $35,000. This verdict was received by the court and recorded. After this, the defendant below filed its motion with the court stating that in accordance with subdivision 3 of sec. 68 of the Civil Practice Act, Cahill's St. ch. 110, ¶ 196, it filed said motion requesting the court to enter a judgment in favor of said defendant notwithstanding the verdict. This motion was filed in the alternative. While it was primarily a motion for judgment *non obstante*

*veredicto,* yet the defendant included therein its motion to the effect that if judgment notwithstanding the verdict was denied, then the defendant be granted a new trial. Upon the motion filed, the court entered judgment in favor of the defendant *non obstante veredicto.* The plaintiff below prosecutes this appeal from the judgment of the court entered upon the said motion of the defendant.

Subdivision 3(a) of sec. 68 of the Practice Act, Cahill's St. ch. 110, ¶ 196, purports to give either side the right to a judgment notwithstanding the verdict. At common law, a judgment *non obstante veredicto* could be entered only where the plea of the defendant confessed the plaintiff's cause of action, and, in defense thereto, set up insufficient matters of avoidance, which, if found to be true, would not constitute a defense or bar to the action. In such a case the plaintiff was entitled to a judgment notwithstanding a verdict found in favor of the defendant. A motion for such a judgment was never permitted upon the part of the defendant. A motion for an instructed verdict is the method universally recognized for challenging the sufficiency of the evidence, while motions for judgment notwithstanding the verdict, have always been a challenge directed to the sufficiency of the pleadings, and limited to the plaintiff. The corresponding right on the part of a defendant under such circumstances was a motion in arrest of judgment. However, this rule has been somewhat relaxed in certain jurisdictions by legislative enactment, and in those States the common law motion for judgment *non obstante veredicto* has been extended to cases where, on the evidence, either party is clearly entitled thereto. It would appear by the above section of the Practice Act of this State that it was the intention of the legislature to extend the right to either litigant to make motion for judgment notwithstanding the verdict.

The appellant complains of but one error, namely, that the trial court erred in granting appellee's motion for judgment *non obstante veredicto*, and in entering its judgment accordingly. Appellee maintains that the court was correct in this respect, urging that before the appellant was entitled to recover damages against appellee, that the burden rested upon him to show that the appellee in the transaction involved, was engaged in interstate commerce; that appellant was in the exercise of due care at the time; and that his injuries resulted because of defendant's negligence.

Appellant was working for a dairy company and at the time of the accident was subject to the Workmen's Compensation Act of Illinois, Cahill's St. ch. 48, ¶ 201 *et seq*. The particular train that collided with appellant's truck was a suburban train running from Waukegan to Chicago. As stated above, appellee urges that it must appear that in the transaction involved, it was subject to interstate commerce and not within the rule applicable to intrastate commerce. It has been definitely settled that an employee of a railroad company in the capacity of a flagman at a public crossing, where the tracks are used in both interstate and intrastate commerce, is an employee within the scope of the Federal Employers' Liability Act, and his duties are considered as an incident of interstate commerce. *Chicago & A. R. Co. v. Industrial Commission*, 288 Ill. 603; *Pittsburgh, C., C. & St. L. R. Co. v. Industrial Commission*, 291 Ill. 396. It has been said, "The service of a flagman concerns the safety of both commerces, and to separate his duties by moments of time or peculiar incidents to its exertion, would be to destroy its unity and to commit it to confusing controversies." *Wheelock v. Industrial Commission*, 318 Ill. 537, 542. It appears that appellee transported interstate as well as intrastate commerce, over the tracks in question, and that its crossing watchman was em-

ployed to warn traffic both as to interstate commerce and intrastate commerce. It was his duty to warn the public of the approach of all trains during the hours which he worked. The crossing watchman being an employee of appellee engaged in interstate commerce, appellee is therefore barred from claiming the benefit of sec. 29 of the Workmen's Compensation Act of this State, Cahill's St. ch. 48, ¶ 229. *O'Brien v. Chicago City Ry. Co.,* 305 Ill. 224; *Goldsmith v. Payne,* 300 Ill. 119; *Brown v. Illinois Terminal Co.,* 319 Ill. 326.

Appellant testified that on the morning in question, he was driving the milk truck along Second avenue at about 6:30 o'clock; that it was dark; that he had his headlights burning; that when he reached the intersection of said Second avenue and the North Shore Electric Line, he stopped his truck and waited for a North Shore electric train to pass; that he then looked and saw no watchman, whereupon he proceeded over the railway tracks in second gear at about 10 miles per hour. He states that he remembers nothing after this, until he regained consciousness in the hospital.

Appellant based his right of recovery upon the failure of appellee's servant to perform his duty, by giving appellant warning of the approach of the train. Appellant was 40 years old. He traveled this milk route every day at about the same time. He began this work in March, 1932, and the accident occurred in January, 1933. Edward Thompson, a machinist, was driving his car just behind the truck of appellant at the time of the accident. He saw the accident. He states there was nothing between his car and appellant's truck to obstruct his view. He further states that he saw someone running from the direction of the watchman's cabin toward the crossing, carrying a lantern; that such person was from 25 to 50 feet north of the crossing at the time the witness first saw him, and that such person arrived at the crossing just as the

truck of appellant was struck by the train. The witness further states that he saw no one standing on the crossing, nor any light there at the time appellant drove his truck upon the tracks. The witness immediately got out of his car and went to the scene of the accident. He states that no one was there other than the appellant, the witness, and the crossing watchman who had a lantern in his hand. A policeman later came to the scene of the accident, whom the witness knew and to whom he talked. The witness' daughter was riding in the car with him, and her testimony is substantially the same as that of her father. The witness states that he is familiar with the crossing in question. The watchman's cabin was west of appellee's tracks and north of the public highway. The North Shore electric tracks are west of appellee's tracks, and the watchman's cabin is about 40 feet west of the North Shore tracks. It was from this cabin that the witness, Thompson, and his daughter state they saw a man running toward the crossing, carrying a lantern.

Carmino De Santo was the crossing watchman for appellee, on the morning in question. He states that the cabin in which he stayed was equipped with a system of electric bells to warn the watchman of approaching trains, and that upon receiving such warning, it was his custom, in the night, to take his lantern and stop sign and go out upon the middle of the crossing to warn traffic. On this morning he went to work at 5:30 o'clock. He insists that at the time of the accident he was out upon the "cross," which is his term for the crossing, trying to warn appellant, and that he waved his lantern at appellant and called to him to stop, but that he could not stop him. Appellee had other evidence tending to show that its watchman was at his post of duty at the time of the accident, but the probative force of their testimony and that of appellant's witnesses, was a question of fact resting within the province of the jury.

A motion to instruct the jury to find for the defendant is in the nature of a demurrer to the evidence, and the testimony so demurred to, together with all reasonable inferences arising therefrom, must be taken most strongly in favor of the plaintiff. *McCune v. Reynolds,* 288 Ill. 188. On considering a motion for an instructed verdict, the trial court has nothing to do with any question as to the preponderance of the evidence or the credibility of the witnesses. The only question which the court has to determine is whether there is in the record any evidence which, if true, fairly tends to prove the allegations of the declaration. The question of the weight to be given the testimony is a question for the jury. The court cannot weigh the evidence of the plaintiff and defendant in order to determine where in its opinion the preponderance lies. Controverted questions of fact are to be submitted to the jury for its consideration and determination. *McFarlane v. Chicago City Ry. Co.,* 288 Ill. 476. Appellee defendant filed its motion at the close of plaintiff's evidence, and again at the close of all the evidence, asking the court to give a peremptory instruction directing a verdict in favor of said defendant. The court refused to grant the motions, but reserved his ruling upon the motion last submitted. No distinction can be drawn between a case where a peremptory instruction is asked at the close of the plaintiff's evidence, and where the instruction is again asked at the close of all the evidence. *Chicago City Ry. Co. v. Martensen,* 198 Ill. 511. In the above case with reference to this question, it is stated on page 512 of the opinion, ''It is never a question of the weight of the testimony.'' The court further commenting upon the distinction sometimes sought by litigants to be drawn between the disposition of such a motion by the trial court at the close of all the evidence, and at the close of the plaintiff's evidence, makes the following statement: ''If, as contended by counsel for appellant, the trial court may,

at the close of all the evidence, take a case from the jury merely because he regards the clear preponderance of the evidence, or the overwhelming preponderance of the evidence, as being in favor of the defendant, then the right of trial by jury is left to the judgment and discretion of the court; and no one would seriously insist upon such a rule.''

We are not of the opinion that the present Practice Act in allowing a trial court to give judgment notwithstanding the verdict, in favor of a defendant, has in any way abrogated or modified the above rules of law. The trial court has no more power to weigh and determine controverted questions of fact under the present Practice Act, than it had prior thereto. In furtherance of the general principle that it is preferable that cases involving questions of fact should be disposed of on their merits by a jury, rather than upon formal motions, a trial court after denying a motion for an instructed verdict for defendant, at the close of plaintiff's evidence and again at the close of all the evidence, should not render nugatory the verdict of a jury returned on disputed questions of fact, by rendering a judgment *non obstante veredicto* in favor of such defendant; but if the court is dissatisfied with the verdict under the evidence, he should grant a new trial instead.

The judgment of the trial court is reversed and this cause is remanded for another trial.

*Reversed and remanded.*